**Office of Disciplinary Counsel v. Bentivegna**

Disciplinary Board Docket no. 156 D.B. 2002.

O'CONNOR, *Member,* April 16, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On November 19, 2002, petitioner, Office of Disciplinary Counsel, filed a petition for discipline against Antoinette M. J. Bentivegna, respondent. The petition charged respondent with multiple violations of the Rules of Professional Conduct arising out of her actions in four bankruptcy matters.

A disciplinary hearing was held on April 29, 2003, before Hearing Committee 1.17 comprised of Chair Gilbert J. Scutti, Esquire, and Members Heather Gallagher Tucker, Esquire and Martin N. Lisman, Esquire. Stuart L. Haimowitz, Esquire, represented respondent. Petitioner presented the testimony of four witnesses and in-

troduced joint stipulations of law and fact and 51 exhibits. Respondent offered her own testimony.

The Hearing Committee filed a report on November 6, 2003, finding that respondent violated the Rules of Professional Conduct as charged in the petition for discipline and recommending that respondent be suspended for a period of six months followed by three years of probation with a practice monitor.

Petitioner filed a brief on exceptions on November 24, 2003, urging that respondent be suspended for a term of not less than one year and one day. No opposing exceptions were filed by respondent.

This matter was adjudicated by the Disciplinary Board at the meeting of January 14, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provision of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1941 and was admitted to practice law in the Commonwealth of Pennsylvania in 1991. Her office is located at 70 W. Oakland Avenue, Suite 314, P.O. Box 942, Doylestown, PA 18901. Re-

spondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has a history of discipline consisting of a private reprimand administered in February of 2002. The misconduct leading to the reprimand involved two bankruptcy matters. In the first, respondent made a misrepresentation to the bankruptcy judge and in the second matter respondent failed to appear at a bankruptcy court hearing.

*Charge I—Suzanne Brown Bankruptcy Matter*

(4) On November 28, 1995, Mrs. Suzanne Brown, acting pro se, filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

(5) Respondent was not counsel for Mrs. Brown.

(6) In 1996, respondent represented Mrs. Brown's husband, R. Warren Brown, in a bankruptcy court case, which was closed in November 1996.

(7) Respondent's representation of Mr. Brown consisted of providing legal advice to Mr. Brown as to his options following the issuance of an order by the bankruptcy court dated September 12, 1996, barring Mr. Brown from filing any future bankruptcy petitions for 180 days from the date of dismissal of the petition.

(8) Respondent was aware that once Mr. Brown's bankruptcy case was dismissed he was barred for 180 days from filing another bankruptcy petition.

(9) On January 13, 1997, Comnet Mortgage Services filed a motion for relief from the automatic stay in Mrs. Brown's bankruptcy matter.

(10) Mr. Brown contacted respondent to seek her assistance in responding to the motion filed by Comnet, which was to be heard by the bankruptcy court on February 13, 1997.

(11) Respondent agreed to contact counsel for Comnet.

(12) On February 12, 1997, respondent had a telephone conversation with Attorney Michael S. Dinney, Comnet's counsel.

(13) Respondent represented to Mr. Dinney that she had been retained to represent Mrs. Brown, the debtor, as well as Mrs. Brown's husband, the co-borrower, and that she needed additional time to prepare for the hearing.

(14) This was a misrepresentation, as Mrs. Brown had not retained respondent to represent her in her bankruptcy matter.

(15) Respondent had several telephone conversations with Mr. Dinney on February 12, 1997, and an agreement settling the motion was reached.

(16) The settlement negotiated by respondent and Mr. Dinney required Mr. and Mrs. Brown to sign a written agreement setting forth the terms of the settlement.

(17) Respondent did not have Mrs. Brown's authority to settle the motion.

(18) Believing that an oral settlement agreement had been reached between all parties, Mr. Dinney cancelled the February 13, 1997 hearing relating to the motion.

(19) Under cover of a letter dated February 13, 1997, Mr. Dinney sent respondent a "Stipulation of settlement

of motion for relief from the automatic stay" for respondent's signature and that of her "clients," with a request that the stipulation be returned to his office.

(20) Respondent received the letter of February 13, 1997.

(21) The stipulation stated that it pertained to a bankruptcy case involving a debtor named Suzanne Brown and that respondent represented Mr. and Mrs. Brown.

(22) Upon receipt and review of this letter and the stipulation, respondent failed to advise Mr. Dinney that she did not have the authority to settle the motion on Mrs. Brown's behalf and that she did not represent Mrs. Brown.

(23) On April 8, 1997, Comnet filed a motion of Comnet Mortgage Services to enforce agreement to enter into stipulation and for sanctions.

(24) On April 7, 1997, Mr. Dinney mailed a copy of the motion to enforce to respondent by regular mail.

(25) Respondent received and reviewed the motion to enforce.

(26) Respondent realized that Mr. Dinney believed she represented Mrs. Brown; nevertheless, she took no immediate action to advise Mr. Dinney that she did not have authority to settle the motion on Mrs. Brown's behalf and that she did not represent Mrs. Brown.

(27) On May 1, 1997, Bankruptcy Judge Diane Weiss Sigmund held a hearing on Comnet's motion to enforce.

(28) At no time prior to the date of the hearing did respondent contact Mr. Dinney to advise him that she did not have the authority to settle the motion on Mrs.

Brown's behalf and that she did not represent Mrs. Brown.

(29) On the morning of the hearing, respondent disclosed that she was acting as counsel for Mr. Brown, but not Mrs. Brown.

(30) Following the hearing, Judge Sigmund issued an order dated May 21, 1997, in which she found that respondent:

(a) led Mr. Dinney to reasonably believe that respondent represented both Mr. and Mrs. Brown;

(b) never informed Mr. Dinney during their telephone conversations that she did not represent Mrs. Brown;

(c) did not take any action prior to the hearing to contact and advise Mr. Dinney that she did not represent Mrs. Brown;

(d) did not testify credibly at the May 1, 1997 hearing in relation to when she discovered that Mr. Dinney "mistakenly believed" that she represented Mrs. Brown; and

(e) had engaged in deceptive conduct.

(31) Judge Sigmund sanctioned respondent by requiring her to pay counsel fees and expenses to Comnet after noting that she had the inherent power to impose sanctions because respondent's conduct threatened the orderly administration of justice.

(32) Respondent's testimony at the disciplinary hearing regarding the circumstances surrounding her involvement in Mrs. Brown's bankruptcy case and her failure to inform Mr. Dinney that she was not counsel for Mrs. Brown was not credible.

*Charge II—Robert Hammernik Bankruptcy*

(33) Respondent represented Robert Hammernik in a Bankruptcy Court case that was filed in July 1999 and was dismissed later that month because the necessary paperwork had not been filed.

(34) Mr. Hammernik spoke to respondent in September 1999 regarding a divorce case that respondent was handling on his behalf.

(35) During that September 1999 conversation, respondent did not request Mr. Hammernik's permission to file another bankruptcy petition.

(36) Mr. Hammernik did not authorize respondent to file another bankruptcy petition on his behalf.

(37) After September 1999, Mr. Hammernik did not receive from respondent any correspondence, telephone calls, or pages on his pager.

(38) On March 9, 2000, respondent, acting without Mr. Hammernik's authority, filed a bankruptcy petition on behalf of Mr. Hammernik, along with an "Application to pay filing fees in installments."

(39) Without Mr. Hammernik's authorization or consent, respondent signed Mr. Hammernik's name on the bankruptcy petition and "Application to pay filing fees in installments."

(40) Respondent failed to advise Mr. Hammernik that she had filed a Chapter 13 bankruptcy petition on his behalf.

(41) Mr. Hammernik retained Attorney Jeffrey Fournier to represent him in filing for bankruptcy.

(42) On March 9, 2000, Mr. Fournier filed a Chapter 13 bankruptcy petition on behalf of Mr. Hammernik.

(43) On March 10, 2000, Judge Sigmund issued an order directing that a hearing be held on March 23, 2000, and that respondent, Mr. Hammernik, and Mr. Fournier appear to explain why two bankruptcy petitions were filed on behalf of Mr. Hammernik on the same day, and which of the two cases should be dismissed.

(44) Mr. Hammernik learned that respondent filed a petition on his behalf from his counsel, Mr. Fournier.

(45) On March 31, 2000, Judge Sigmund issued an order finding that respondent had commenced a bankruptcy case without Mr. Hammernik's authorization and dismissed the case.

(46) Respondent's testimony at the disciplinary hearing regarding the circumstances of her decision to file a bankruptcy petition for Mr. Hammernik and her claim of having obtained his authorization to file and sign his same was not credible.

*Charge III—J. Scott Kennedy Bankruptcy*

(47) In September or October of 1999, respondent had a meeting at her office with Mrs. Frances Kennedy to discuss Mr. and Mrs. Kennedy's retaining respondent for the purpose of filing for bankruptcy.

(48) During this meeting, respondent reviewed with Mrs. Kennedy her legal options and provided Mrs. Kennedy with a folder containing information about filing for bankruptcy.

(49) Shortly after this initial meeting, respondent and Mrs. Kennedy had a second meeting, at which time Mrs.

Kennedy signed a retainer agreement and paid respondent $100.

(50) At the conclusion of the second meeting, respondent informed Mrs. Kennedy that she would contact her after reviewing Mrs. Kennedy's bills to inform her of what would transpire next.

(51) At this second meeting, no firm agreement had been reached concerning payment of respondent's fee although respondent had been granted limited authority by Mrs. Kennedy to begin preparing for filing for bankruptcy.

(52) Although the mortgage on the marital residence was only in the name of Mrs. Kennedy's husband, Mrs. Kennedy informed respondent that she and her husband would be jointly filing for bankruptcy because of Mrs. Kennedy's credit card debt.

(53) During the two meetings between Mrs. Kennedy and respondent, respondent did not ask Mrs. Kennedy for permission to file and to sign a bankruptcy petition on behalf of her husband.

(54) In January 2000, Mrs. Kennedy received notice from the sheriff that the marital home was scheduled for a sheriff's sale.

(55) Over the course of several weeks, Mrs. Kennedy left several messages for respondent informing her of the upcoming sheriff's sale, expressing concern, and requesting that respondent contact her.

(56) Respondent eventually returned Mrs. Kennedy's messages by leaving a message on Mrs. Kennedy's answering machine stating that everything was fine.

(57) Respondent's message did not inform Mr. or Mrs. Kennedy that respondent intended to file and sign a Chapter 13 bankruptcy petition on behalf of Mr. Kennedy.

(58) Following this message, Mr. and Mrs. Kennedy decided to retain Attorney Jeffrey C. McCollough to represent them in filing for bankruptcy.

(59) After retaining Mr. McCollough, Mrs. Kennedy left a message on respondent's answering machine, advising respondent of her termination.

(60) On February 4, 2000, Mr. McCollough filed a Chapter 13 bankruptcy petition on behalf of Mr. and Mrs. Kennedy.

(61) On February 10, 2000, respondent filed a Chapter 13 bankruptcy on behalf of Mr. Kennedy.

(62) Mr. Kennedy did not authorize respondent to file a bankruptcy petition on his behalf.

(63) Without Mr. Kennedy's authorization or consent, respondent signed Mr. Kennedy's name on the petition and "Application to pay filing fees in installments."

(64) Respondent had never met or spoken with Mr. Kennedy prior to filing the Chapter 13 bankruptcy petition.

(65) Mrs. Kennedy did not authorize respondent to sign Mr. Kennedy's name on a bankruptcy petition nor any other pleading.

(66) Respondent never informed either Mr. or Mrs. Kennedy that she had filed a Chapter 13 bankruptcy petition.

(67) Mr. and Mrs. Kennedy discovered that respondent had filed an unauthorized bankruptcy petition after

receiving from the Bankruptcy Court a copy of the filing fee application that respondent had filed.

(68) By letter dated February 29, 2000, Mr. Kennedy advised Judge Sigmund that he did not authorize respondent to file a bankruptcy petition on his behalf, that he did not sign the "Application to pay filing fees in installments" and that the only bankruptcy case he authorized was the one filed by Attorney McCollough.

(69) By order dated March 10, 2000, Judge Sigmund directed that a hearing be held on March 23, 2000 and that respondent and Mr. and Mrs. Kennedy appear and explain why two bankruptcy cases were filed on behalf of Mr. Kennedy.

(70) Following the hearing, Judge Sigmund issued a March 31, 2000 order that dismissed the case that respondent had filed on behalf of Mr. Kennedy and determined that respondent had commenced the case without Mr. Kennedy's authorization. Judge Sigmund concluded that respondent made misrepresentations in the "Application and order for extension of time to file bankruptcy schedules, statements, summary sheets and plan," and directed respondent to disgorge the $100 fee she received from Mrs. Kennedy.

(71) Respondent's testimony at the disciplinary hearing regarding the circumstances of her decision to file the petition on Mr. Kennedy's behalf was not credible. Her claims that Mrs. Kennedy signed Mr. Kennedy's name on the petition and that Mrs. Kennedy authorized her to file that bankruptcy petition was not credible.

*Charge IV—Gregg S. Rosen Bankruptcy*

(72) Sometime in February 1999, Gregg S. Rosen retained respondent to represent him in filing for bankruptcy.

(73) On February 11, 1999, respondent filed a Chapter 13 bankruptcy petition on behalf of Mr. Rosen.

(74) On March 4, 1999, this bankruptcy case was dismissed.

(75) On May 13, 1999, respondent filed a second Chapter 13 bankruptcy petition on behalf of Mr. Rosen.

(76) On June 16, 1999, this bankruptcy case was dismissed.

(77) On November 10, 1999, respondent filed a third Chapter 13 bankruptcy petition on behalf of Mr. Rosen, along with an "Application to pay filing fees in installments."

(78) Respondent also filed in that action an "Application/order for fees" in which respondent stated that she had received from Mr. Rosen $600, of which $160 was applied towards the filing fee and the remaining $440 went towards her $1,200 retainer.

(79) Respondent made a misrepresentation in the "Application/order for fees" when she stated that she applied $160 towards the filing fee because respondent had not paid the $160 filing fee in full.

(80) By order dated November 17, 1999, Judge Sigmund approved payment of the balance of the filing fee in installments.

(81) Respondent failed to make the required installment payments, despite representing that Mr. Rosen had

paid her sufficient funds to satisfy the entire $160 filing fee.

(82) On January 7, 2000, Standard Federal Bank filed a motion for "Relief from automatic stay under section 362 pursuant to Bankruptcy Procedure Rule 2001."

(83) In the motion for relief, Standard asserted that Mr. Rosen filed the aforementioned three bankruptcy cases and requested that when the current case was dismissed, Mr. Rosen be prohibited from filing another bankruptcy case.

(84) Respondent was served with a copy of the motion for relief.

(85) Respondent failed to advise Mr. Rosen of her receipt of the motion for relief.

(86) Respondent failed to file an answer to the motion for relief.

(87) By order dated February 7, 2000, Judge Sigmund directed that if the bankruptcy case was dismissed, Mr. Rosen could not file for bankruptcy for 180 days from the date of dismissal.

(88) On February 10, 2000, while the case was still pending, respondent filed in the Bankruptcy Court a fourth bankruptcy petition on behalf of Mr. Rosen.

(89) Respondent did not have Mr. Rosen's authority to file a fourth bankruptcy petition on his behalf.

(90) Respondent signed Mr. Rosen's name on the bankruptcy petition without his authorization or consent.

(91) Respondent failed to advise Mr. Rosen that she had filed a fourth bankruptcy petition on his behalf.

(92) Respondent also filed an "Application to pay filing fees in installments."

(93) On February 11, 2000, Judge Sigmund issued an order allowing Mr. Rosen to pay the filing fees in installments.

(94) On February 17, 2000, Judge Sigmund entered an order dismissing the third bankruptcy case because the filing fee had not been paid in full within the required time period.

(95) Respondent failed to advise Mr. Rosen that the third bankruptcy case had been dismissed because of her failure to make the required installment payments.

(96) On or about February 17, 2000, Standard filed a motion to annul the automatic stay pursuant to 11 U.S.C. §362(d) in the fourth bankruptcy case.

(97) Respondent was served with a copy of the motion to annul.

(98) Respondent failed to advise Mr. Rosen that Standard had filed the motion to annul.

(99) On February 24, 2000, Judge Sigmund issued an order in the third bankruptcy case directing that a hearing be held on March 9, 2000, at which respondent and Mr. Rosen were to appear to address the issue of respondent's apparent violation of F.R.B.P. 1006(b)(3), which prohibited respondent from accepting any payment towards her retainer from Mr. Rosen until respondent had paid the required filing fee for Mr. Rosen's bankruptcy case.

(100) Mr. Rosen and respondent testified at the March 9, 2000 hearing.

(101) Following the hearing, Judge Sigmund issued an order dated March 15, 2000, directing respondent to disgorge all fees she received from Mr. Rosen, which amounted to $750.

(102) Respondent's testimony at the disciplinary hearing wherein she claimed that she telephoned Mr. Rosen and received his authorization to file and sign his name to the fourth bankruptcy petition and that Mr. Rosen failed to pay her the entire filing fee for the third petition, resulting in dismissal of that case, was not credible.

(103) Respondent did not exhibit sincere remorse for her misconduct.

## III. CONCLUSIONS OF LAW

By her conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.1—A lawyer shall provide competent representation to a client.

(2) R.P.C. 1.2(a)—A lawyer shall abide by a client's decision concerning the objectives of representation and shall consult with the client as to the means by which they are to be pursued.

(3) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(4) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(5) R.P.C. 1.5(a)—A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee.

(6) R.P.C. 3.3(a)(1)—A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

(7) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(8) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with misconduct in four bankruptcy matters. Petitioner bears the burden of proving respondent's misconduct by a preponderance of the evidence that is clear and convincing. *Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441 (2000). The record is clear that petitioner met its burden and proved that respondent engaged in serious misconduct.

Respondent engaged in the serial filing of bankruptcy petitions and pleadings without authorizations from her purported clients. In the Kennedy case, she never met Mr. Kennedy, for whom she prepared a petition for bankruptcy, signed his name to the petition, and filed it with the bankruptcy court. In the Hammernik and Kennedy matters, she filed bankruptcy petitions at the same time that other petitions had been filed by rightful counsel, thus requiring the court to hold a hearing to determine which petition was proper. Twice the court sanctioned respondent after it found that she commenced filing bankruptcy proceedings without client authorization. Respon-

dent failed to communicate her actions to these purported clients, and in the Rosen matter she filed concurrent petitions and did not apprise her client of that fact, taking it upon herself to sign her client's name to the petition without his knowledge or consent. Respondent failed to make required payments of installment fees and collected a fee in violation of the bankruptcy procedures. In the Brown matter, respondent misrepresented to opposing counsel that she had permission to settle a matter for Mrs. Brown, when in fact she did not even represent Mrs. Brown.

At the disciplinary hearing, respondent appeared unaware of the serious implications of her actions, and her attempts to explain her actions resulted in her testimony being impeached. Respondent contradicted herself throughout her testimony. At certain points, respondent insisted she would never sign a client's name to a bankruptcy petition, and when she was confronted with the fact that she had done so, she stated it was only in one matter. Subsequently, she was reminded that she had done so in more than one matter, that being the Hammernik, Kennedy and Rosen cases. Respondent stated she would not represent a husband and wife in a bankruptcy matter without meeting both spouses, yet she filed a bankruptcy petition on Mr. Kennedy's behalf without ever having met him, and she proceeded to enter a settlement agreement for Mrs. Brown without having met her. In the Rosen matter, respondent stated that Mr. Rosen failed to pay respondent the entire filing fee for the bankruptcy petition. This was refuted by her sworn testimony at the March 9, 2000 Bankruptcy Court hearing, in which she admitted that she was responsible for satisfying the installment payment of the filing fee, and the "Applica-

tion/order for fees" prepared by respondent in Mr. Rosen's third bankruptcy petition, wherein respondent alleged she received from Mr. Rosen the $160 filing fee. In the Brown matter, respondent stated that since she was handling a bankruptcy matter on behalf of Mr. Brown, she would not have informed opposing counsel that she represented Mrs. Brown. This testimony is not credible and is refuted by Michael Dinney's testimony, the letters, stipulation and motion to enforce she received from Mr. Dinney, which placed respondent on clear notice that the case was on behalf of Mrs. Brown, and by respondent's own conduct. Respondent had no reasonable explanation for her actions.

The record demonstrates respondent ran a slipshod law practice where she did not keep track of information and did not know the status of her client files. Respondent does not appear to have carefully read any of the documents in question. Respondent's description of her office practices contradicts the actual nature of her actions in these four matters. Respondent handled these matters in a very similar fashion, providing a clear snapshot of her dubious practice habits.

The Hearing Committee recommended that respondent be suspended for a period of six months followed by three years of probation. In light of the serious nature of respondent's misconduct, as well as her demeanor before the Hearing Committee, the board recommends that respondent be suspended for a period of one year and one day. Respondent is currently unfit to practice law without a future show of fitness. The recommendation of probation is likewise inappropriate. Respondent has not shown recognition of the causes of

her misconduct or a real commitment to improvement. Additionally, respondent engaged in a pattern of misrepresentations, which cannot be prevented by a practice monitor.

For the reasons as set forth above, the board recommends that respondent be suspended for a period of one year and one day.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Antoinette M. J. Bentivegna, be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Gephart dissented and would recommend disbarment.

Board Members Peck and Newman did not participate in the January 14, 2004 adjudication.

---

## DISSENTING REPORT AND RECOMMENDATION

GEPHART, *Member,* April 16, 2004—A majority of the board has recommended to the Supreme Court that respondent be suspended for a period of one year and one day. I recommended that respondent be disbarred, and write this dissent to explain the reasons that I believe such a harsh sanction is appropriate in this case.

Respondent was admitted to practice in 1991 and maintains an office in Doylestown, where she apparently concentrates her practice in the area of bankruptcy. She has a history of discipline consisting of a private reprimand administered in February of 2002. The misconduct leading to the reprimand involved two bankruptcy matters. In one, she made a misrepresentation to the bankruptcy judge, and in the other, she failed to appear at a bankruptcy hearing.

The current misconduct involves four charges, all of which include misrepresentations. In the first matter, respondent was retained to represent a husband in a bankruptcy matter. Although she was not retained by her client's wife (nor had she ever met her), she represented to counsel for a creditor that she had been retained to represent both parties. Respondent engaged in settlement discussions, and failed to disclose her misrepresentations until the morning of the scheduled hearing before the bankruptcy judge. Following the hearing, the judge issued an order finding that respondent had engaged in deceptive conduct, and that she did not testify credibly at the hearing. The judge sanctioned her by requiring her to pay counsel fees and expenses to the creditor.

In a second matter, respondent failed to advise her client that a bankruptcy petition she had filed was dismissed for lack of proper paperwork. Without her client's authorization, she filed a second petition, together with an "Application to pay filing fees in installments." The judge found that respondent had commenced the bankruptcy case without her client's authorization, and dismissed the case. At the disciplinary hearing, respondent testified that she had obtained authorization to file and sign her client's

name, and the committee found her testimony not credible.

In a third case, the bankruptcy judge found that respondent had filed a bankruptcy case without a client's authorization, although she signed her client's name to the petition and an "Application to pay filing fees in installments." The bankruptcy judge again concluded that respondent made misrepresentations at the hearing, and directed her to disgorge her legal fee. At the disciplinary hearing, respondent testified that she had obtained authorization from her client to file and sign her name. She also stated that her client had signed her husband's name on the petition. Again, her testimony was found to be not credible.

Under the final charge, respondent again filed a bankruptcy petition (in this case, four petitions) and accompanying application to pay filing fees in installments, and signed her client's name. She failed to advise her client that three previous petitions she filed had been dismissed. Although her client had paid the filing fees, she misrepresented in the "Application/order for fees" that she had applied the money toward the filing fees. After the judge approved payment of the balance of the filing fees in installments, she failed to make the required installment payments. Following the hearing, the judge again ordered respondent to refund her fees to her client. At the disciplinary hearing, respondent's testimony that she had received her client's permission was again found to be not credible.

It is recognized that respondent's conduct in the above four charges pre-dated her private reprimand which was received in February 2002. Had respondent testified truth-

fully at the disciplinary hearing, I would have agreed with the majority that a suspension of one year and a day was appropriate discipline. However, the fact that she continues to lack credibility, even while under oath, and exhibits no remorse for her conduct, shows that she still does not comprehend that she has done anything wrong.

Her propensity to be less than truthful in carrying out her professional duties propelled her into her current disciplinary dilemma. Instead of learning from her experiences, respondent compounded her problems by choosing to be less than forthcoming to the hearing committee. Her continuing lack of candor before the hearing committee indicates, in my opinion, a serious character flaw that cannot be corrected by a suspension.

Disbarment is the most severe sanction that may be imposed on an attorney. In this matter, I believe it is the most appropriate sanction, as respondent's history of misrepresentations and deceitful conduct demonstrates her disrespect for her clients and the court system in general. Thus, I recommend that respondent be disbarred.

## ORDER

And now, July 15, 2004, upon consideration of the report and recommendations of the Disciplinary Board and dissenting report and recommendation dated April 16, 2004, it is hereby ordered that Antoinette M. J. Bentivegna be and she is suspended from the bar of this Commonwealth for a period of two years, and she shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.