**Office of Disciplinary Counsel v. Weaver**

Disciplinary Board Docket no. 56 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NORDENBERG, *Member,* March 4, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On April 8, 2004, Office of Disciplinary Counsel filed a petition for discipline against respondent, Carol J. Weaver. The petition charged respondent with misappropriation and commingling of entrusted funds. Respondent did not file an answer to petition.

A disciplinary hearing was held on September 9, 2004, before Hearing Committee 2.10 comprised of Chair Anna M. Durbin, Esquire, and Members Karen J. Schular, Esquire, and Raymond Peppelman Jr., Esquire. Respondent did not appear for the hearing.

The committee filed a report on December 6, 2004, finding that respondent violated the Rules of Professional Conduct as charged in the petition for discipline, and

recommending that respondent be suspended from the practice of law for a period of one year and one day.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, PA 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Carol J. Weaver, was born in 1956 and was admitted to practice law in the Commonwealth of Pennsylvania in 1983. She maintains her office at 644 Walnut Street, Easton, PA 18042, and also resides at that address.

(3) Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(4) Respondent has a prior history of discipline consisting of two informal admonitions administered in 1999.

(5) During the time period in question, respondent maintained an IOLTA Trust Account at First Union Na-

tional Bank, titled Carol J. Weaver, Attorney-at-Law, attorney trust account.

(6) On April 6, 1998, respondent received $30,000 from Robert J. Szeman.

(7) Respondent deposited Mr. Szeman's monies into her escrow account and agreed to hold those monies in trust on behalf of Mr. Szeman.

(8) By letters dated June 4, 2002, and June 11, 2002, Mr. Szeman requested respondent to provide him with the entire balance of the monies that respondent was holding in her escrow account, minus any legal fees.

(9) On June 25, 2002, respondent provided Mr. Szeman with a handwritten document that respondent signed and endorsed.

(10) Respondent's document represented that there were no legal fees as of June 25, 2002, and the balance in her escrow account as of June 25, 2002, was $20,000.

(11) By letter dated July 3, 2002, Mr. Szeman requested respondent to provide him with a check for the balance of his monies and the packages of his confidential papers he had provided to respondent.

(12) Respondent provided Mr. Szeman with a letter dated July 9, 2002, which stated that "As I told you, and you agreed to, I will look to a solution of this request. When I find one, I will be in touch."

(13) By letter dated July 10, 2002, Mr. Szeman requested respondent to set up an appointment for him to

pick up the $30,000 cash, or an amount of cash close to $30,000.

(14) Mr. Szeman mailed a copy of the July 10, 2002 letter to respondent on the following dates: July 18, July 29, August 7, August 14, August 26, September 4, September 17, October 10, October 21, December 6, 2002, and January 11, January 20, January 28, February 10 and February 23, 2003.

(15) Respondent has not responded in any manner to Mr. Szeman's letters.

(16) By letter dated March 23, 2003, sent by certified mail, return receipt requested, Mr. Szeman requested respondent to provide him with his $20,000 being held in respondent's escrow account, and his two packages of documents he sent to respondent on April 7, 1999 and December 4, 2001.

(17) Respondent has not responded in any manner to Mr. Szeman's letter of March 23, 2003.

(18) The last contact respondent had with Mr. Szeman was the letter dated July 9, 2002 that respondent provided to Mr. Szeman.

(19) To date, respondent has ignored Mr. Szeman's request for delivering the funds he is entitled to receive.

(20) To date, respondent has not provided a full accounting to Mr. Szeman of the funds that she is holding on Mr. Szeman's behalf.

(21) At various times from at least December 31, 1997 to the present, respondent was required to maintain funds inviolate on behalf of the following clients or third par-

ties: Robyn Fatebene, E. Frantz Estate, Walter Pomroy, Robert Szeman and Sal Gillen Jr., Trust.

(22) At various times and in various amounts, respondent's escrow account balance was below the aggregate amount respondent was required to maintain on behalf of her clients or third parties. (See exhibit "A".)

(23) Respondent issued checks from her escrow account, payable to herself, at a time when the actual balances in her escrow account were below the balances she was required to maintain on behalf of her clients or third parties. (See exhibit "B".)

(24) Respondent withdrew and expended funds from her escrow account for her personal benefit when the actual balance in the escrow account was below the balance she was required to maintain on behalf of her clients or third parties. (See exhibit "C".)

(25) On the following dates respondent's escrow account was assessed fees by her bank for unavailable funds/overdraft charge: July 2, 2001, July 26, 2001, July 27, 2001, August 1, 2001, August 3, 2001, and August 10, 2001.

(26) On November 19, 2001, respondent's bank closed her escrow account on the basis that it was overdrawn.

(27) Respondent was served with the petition for discipline by regular and certified mail on April 13, 2004. The certified mailing was returned as "unclaimed" and the regular mail was not returned.

(28) On April 29, 2004, personal service was attempted by Office of Disciplinary Counsel Investigator Joseph Leipert, and a copy of the petition was left at respondent's office in her mailbox.

(29) On July 15, 2004, respondent was served with notice of the pre-hearing conference and disciplinary hearing by regular and certified mail. The certified mail was returned as unclaimed. The regular mail was not returned. On July 28, 2004, Investigator Leipert left notice of the hearing at respondent's office by attaching it to the front door.

(30) Respondent did not appear or participate in the disciplinary hearing.

## III. CONCLUSIONS OF LAW

By her conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(3) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(4) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(5) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, the lawyer shall promptly notify the client or third person. The lawyer shall promptly deliver to the client or

third person any funds or other property that the client or third person is entitled to receive, and upon request by the client, to promptly render a full accounting regarding such property.

(6) R.P.C. 1.15(c)—When, in the course of representation, a lawyer is in possession of property which both the lawyer and another person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interest. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

(7) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty.

(8) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the board on a petition for discipline filed against respondent charging her with violations of the Rules of Professional Conduct arising from allegations of mishandling of client funds. Respondent did not respond to the petition for discipline, and the facts averred in the petition are deemed to be admitted. Respondent did not appear at the disciplinary hearing. The record is clear that respondent received proper notice of the petition for discipline and the date and time of the disciplinary hearing.

Petitioner met its burden of proof by clear and satisfactory evidence that respondent engaged in professional misconduct. *Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441 (2000). Respondent failed to respond to the request of her client, Mr. Szeman, to return documents to him, and she failed to provide an accounting of his monies which she was holding in her escrow account. Furthermore, she converted the funds of Mr. Szeman and various other clients to her own use by writing checks from her escrow account to herself for personal expenses. The total amount of money converted was $21,000.

Respondent's acts of misconduct are extremely serious, as they involve unauthorized dealings with client money. Precedent has established that public discipline is warranted in such cases. *In re Anonymous No. 124 D.B. 97,* 47 D.&C.4th 338 (1998). Review of the case law reveals that the Supreme Court of Pennsylvania has imposed a wide range of suspensions on attorneys who have converted entrusted funds. The number of conversions, length of time involved and attorney's attempts to make restitution are pertinent factors. In *Office of Disciplinary Counsel v. Olshock,* no. 28 D.B. 2002, no. 862 Disciplinary Docket no. 3 (Pa. Oct. 24, 2003), the attorney converted over $22,000 from an estate by issuing to himself checks signed in blank by the executor, in addition to the fees which he charged. Prior to the disciplinary investigation, the attorney disclosed to the heirs his withdrawal of monies and made restitution. The Supreme Court suspended him for a period of three years. In the matter of *In re Anonymous No. 32 D.B. 89,* 13 D.&C.4th 478 (1992), a three-year suspension was imposed on a

lawyer who misappropriated approximately $7,500 in fees over a period of three and one-half years.

Under the circumstances presented, including respondent's failure to appear at the hearing and her two prior informal admonitions, the board is persuaded that a suspension of three years is appropriate.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Carol J. Weaver, be suspended from the practice of law for a period of three years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Saidis dissented and would recommend disbarment.

## ORDER

And now, May 27, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated March 4, 2005, it is hereby ordered that Carol J. Weaver be and she is suspended from the bar of this Commonwealth for a period of four years, and she shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Nigro dissents and would suspend respondent for a period of five years.