**Office of Disciplinary Counsel v. Harmon**

Disciplinary Board Docket no. 15 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CURRAN, *Member,* August 27, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disci-

plinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 5, 2003, Office of Disciplinary Counsel filed a petition for discipline against respondent, Gwendolyn N. Harmon, also known as Gwen Norman. The petition charged respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement arising from allegations that she engaged in a pattern of mishandling fiduciary funds in four client matters. Respondent did not file an answer to any of the counts enumerated in the petition for discipline.

A disciplinary hearing was held on October 20, 2003, before Hearing Committee 1.16 comprised of Chair James D. Golkow, Esquire, and Members Theresa M. Italiano, Esquire, and George D. DiPilato, III, Esquire. Respondent received notice of the hearing; however, she failed to appear at the hearing. Respondent was reached via telephone during the hearing at which time she was permitted to make a statement. After respondent made her statement, the Hearing Committee advised her that the hearing would proceed as scheduled. No witnesses appeared on respondent's behalf.

The Hearing Committee filed a report on April 29, 2004, finding that respondent violated Rules of Professional Conduct 1.4(a), 1.4(b), 1.15(a), 1.15(b), and 8.4(c), and recommending that she be suspended for two years.

This matter was adjudicated by the Disciplinary Board at the meeting of July 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, Office of Disciplinary Counsel, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania, and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the rules.

(2) Respondent was born in 1956 and was admitted to practice law in the Commonwealth of Pennsylvania in 1982. The last known mailing address provided by respondent is 1816 North 26th Street, Philadelphia, PA 19121.

(3) At the time of the hearing, respondent was living in Las Vegas, Nevada.

(4) By order of the Supreme Court dated November 17, 2000, effective December 17, 2000, respondent was transferred to inactive status for failure to meet her Continuing Legal Education requirements.

(5) Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(6) Respondent has no record of prior discipline.

*Charge I—Mishandling of
Fiduciary Funds in General*

(7) During a three-year period from March 17, 1998 to January 1, 2001, respondent mishandled fiduciary funds.

(8) Respondent's escrow account at First Union/ CoreStates Bank was out of trust on 167 separate occasions in amounts ranging from $508.96 to $26,516.08.

(9) The cumulative balances in respondent's escrow account and her First Union operating account were insufficient to cover the amount of fiduciary funds entrusted to respondent on behalf of her clients.

(10) Respondent made numerous transfers from her escrow account to her operating account, and several transfers were made when the operating account had a negative balance.

*Charge II—Demetrius Smith Matter*

(11) Demetrius Smith retained respondent to represent him in connection with a July 1999 motor vehicle accident.

(12) On or about September 9, 1999, respondent received a check in the amount of $1,996.89 from Travelers Property Casualty Insurance made payable to her client to settle the property damage claim.

(13) On September 24, 1999, respondent deposited the check into her escrow account. At the time of the deposit, respondent had a negative balance of $32.80 in the escrow account.

(14) Respondent was required to hold in her escrow account $1,996.89 on behalf of Mr. Smith.

(15) On September 27, 1999, respondent transferred $65 from the escrow account to her operating account.

(16) On September 28, 1999, respondent transferred $1,600 from the escrow account to her operating account, leaving a balance of $299.09 in the escrow account.

(17) Prior to both transfers, respondent's operating account registered a negative balance. Following the $1,600 transfer, respondent's operating account registered a positive balance of $1,554.17.

(18) On September 29, 1999, respondent issued two checks from her operating account to pay her telephone bills.

(19) Thereafter, respondent converted the balance of Mr. Smith's funds that were in the operating account by making miscellaneous withdrawals from the account until October 4, 1999, when the account became overdrawn by $417.56.

(20) Respondent attempted to use funds received on behalf of another client to satisfy her obligation to Mr. Smith. On November 7, 1999, the balance in respondent's escrow account was $2.01. On November 8, 1999, respondent deposited into her escrow account an $8,000 check made payable to another client, Vanessa Austin, which was not backed by sufficient funds.

(21) On November 8, 1999, respondent issued a check from her escrow account made payable to Mr. Smith in the amount of $1,996.89 and forwarded that check to Mr. Smith. When Mr. Smith attempted to de-

posit this check into his account, it was returned to him due to insufficient funds in respondent's client escrow account.

(22) By certified letter dated November 29, 1999, Mr. Smith informed respondent that he would be retaining another attorney and that his new attorney would contact her for the transfer of his file.

(23) In December 1999, Mr. Smith received the funds he was entitled to receive after renegotiating the check.

*Charge III—Judy Lawson Matter*

(24) Respondent was retained to represent Judy Lawson for personal injuries sustained in a June 1996 motor vehicle accident.

(25) In January 1999, respondent settled her client's case and deposited the settlement check in the amount of $3,500 into the escrow account, which brought the balance in the account to $3,508.93.

(26) Respondent was required to hold in her escrow account approximately $1,900 on behalf of Ms. Lawson.

(27) Respondent did not promptly distribute the settlement funds to Ms. Lawson.

(28) On January 25, 1999, respondent transferred $500 from the escrow account to an account at First Union Bank, and $500 from the escrow account to her operating account. On January 26, 1999, respondent issued a check drawn on the escrow account made payable to "cash" in the amount of $2,450. On January 26, 1999, the end-of-day balance in the escrow account was $58.93.

(29) Approximately one month later, respondent made distribution to another client, Edward Jordan. On February 22, 1999, respondent issued a check from her escrow account in the amount of $2,666.67 made payable to Mr. Jordan in final settlement of his automobile accident. On February 26, 1999, respondent transferred $2,500 from her operating account to her escrow account in order to cover the check.

(30) From February 25, 1999 to June 5, 2000, the escrow account had a negative balance on eight occasions.

(31) By check dated June 5, 2000, made payable to Judy Lawson, and drawn on the client escrow account, respondent eventually tendered to Ms. Lawson $1,900.

(32) According to the notations on the check, the original settlement was $3,500. The "discounted" attorney fee was $1,330. The fees and expenses were $270.

(33) In September 2000, Ms. Lawson negotiated the check.

*Charge IV—Michelle King Matter*

(34) Respondent was retained to represent Michelle King and her two minor sons Akeem and Ateem, for personal injuries sustained in October 1998.

(35) On or about December 1999, respondent settled the Kings' claims.

(36) On December 17, 1999, Kemper Insurance Company forwarded to respondent a check in the amount of $15,000 made payable to "Michelle King and Gwen Norman as her attorney"; a check in the amount of $1,000 made payable to "Michelle King as the mother and natural guardian of Ateem King, a minor and Gwen Norman

as their attorney"; and a check in the amount of $1,000 made payable to "Michelle King as the mother and natural guardian of Akeem King, a minor and Gwen Norman as their attorney."

(37) On December 20, 1999, respondent deposited the settlement check for Ms. King in the amount of $15,000 into her escrow account, which brought the end-of-day balance to $15,019.15.

(38) Respondent failed to promptly distribute the settlement proceeds to Ms. King.

(39) Respondent was required to hold in her escrow account not less than $10,000 on behalf of Ms. King.

(40) On December 21, 2000, respondent used Ms. King's settlement funds to satisfy her financial obligation to two other clients, Larry Richardson and Dale Williams.

(41) On January 6, 2000, respondent deposited the settlement checks for Ateem King and Akeem King into the escrow account.

(42) After January 6, 2000, respondent made numerous transfers from her escrow account to her operating account, which caused her escrow account to drop to $331.95 by February 3, 2000, and to reach a negative balance by March 10, 2000. On December 29, 2000, respondent's escrow account had a negative balance in the amount of $12,377.57, at which time the account was closed due to a forged endorsement claim.

(43) In February 2001, respondent forwarded to Ms. King $10,000, which she represented to be the settlement proceeds for Ms. King and her two sons.

## Charge V—Nakole Williams Matter

(44) In May 1998, respondent was retained to represent Nakole Williams for injuries sustained in an automobile accident.

(45) On October 20, 2000, Claims Management Center Inc., issued a check for $3,500 payable to Ms. Williams and respondent as payment and settlement of Ms. Williams' personal injury claims.

(46) By letter dated October 26, 2000, respondent informed Ms. Williams that she negotiated a proposed settlement of her case in the amount of $3,500, enclosed a copy of the release, and requested that Ms. Williams sign the release, have it notarized, and return it to respondent.

(47) On November 2, 2000, Ms. Williams mailed the finalized release to respondent.

(48) Respondent endorsed or caused Ms. Williams' name to be endorsed on the settlement check; however, respondent did not receive authority from Ms. Williams to endorse her name.

(49) On December 4, 2000, respondent deposited the settlement check into the escrow account, and the end-of-day balance in the account was negative $12,500.

(50) Respondent failed to deliver to Ms. Williams her settlement proceeds.

(51) On several occasions, Ms. Williams telephoned respondent's office to inquire whether respondent had received the release and why she failed to distribute any of the funds.

(52) Respondent failed to keep Ms. Williams informed about the status of her case, failed to comply with her requests for information, and failed to disburse the settlement proceeds to her.

(53) On July 30, 2001, Ms. Williams filed a claim against respondent with the Pennsylvania Lawyers Fund for Client Security.

(54) On March 6, 2002, the fund approved Ms. Williams' claim in the amount of $2,100.

(55) In April 2002, Ms. Williams received a check from the fund in the amount of $2,100.

(56) Respondent made a statement by telephone on the day of the disciplinary hearing.

(57) Respondent stated that a lot of the allegations were not true and she felt it was an injustice for her not to be able to defend herself.

(58) The disciplinary hearing had already been continued once by respondent's request.

(59) Respondent did not provide an explanation for her misconduct nor did she demonstrate remorse.

### III. CONCLUSIONS OF LAW

By her conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(2) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(3) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(4) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(5) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with violations of the Rules of Professional Conduct based on her mishandling of client funds. Respondent did not file an answer to the charges. She did not appear at the scheduled pre-hearing conference on July 8, 2003. On July 9, 2003, a telephone conference was held during which respondent participated. She requested a continuance of the August 12, 2003 hearing in order for her to travel from Las Vegas, Nevada, so she could attend the hearing and present a defense to the charges. This request was granted and the disciplinary hearing was rescheduled for October 20, 2003. Respondent did not appear at the hearing on that date, although the record is clear that she received

notice. Respondent was contacted in Las Vegas during the hearing and permitted to make a statement.

Petitioner bears the burden of proof by clear and convincing evidence that respondent committed professional misconduct. *Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441 (2000). The record demonstrates that petitioner met its burden of proof. Respondent commingled fiduciary funds with personal funds by depositing client funds into her operating account. She made numerous transfers of client funds from her escrow account to her operating account, then proceeded to use these funds to pay personal bills. Many of these transfers were made when the operating account had a negative balance. While in the Smith, Lawson and King matters, respondent eventually distributed settlement funds due and owing to her clients, in the Williams matter respondent did not communicate with her client and did not distribute her funds, forcing Ms. Williams to go to the client security fund for payment. Despite being given numerous opportunities to respond to the charges brought by petitioner, respondent failed to dispute or present any defense to the evidence establishing violation of the Rules of Professional Conduct.

What remains to be decided by the board is the appropriate sanction to be imposed on respondent in light of her misconduct. The mishandling of client funds in four matters is a serious act of misconduct. Precedent has established that unauthorized dealings with client money requires some form of public discipline due to the breach of trust involved. *In re Anonymous No. 124 D.B. 97,* 47 D.&C.4th 338 (1998). The appropriateness of a disciplinary sanction is based on the nature and gravity of the

misconduct and the aggravating and mitigating factors present. *In re Anonymous No. 85 D.B. 97,* 44 D.&C.4th 299 (1999). In the instant matter, respondent's inattentiveness to the disciplinary proceedings, as well as her failure to appear in person before the Hearing Committee, weigh against her. Although the hearing had been continued from its original date to allow respondent to travel from Nevada, she still did not appear at the rescheduled hearing. She made it clear that she believed the allegations against her were not true and that it was an injustice to allow the hearing to continue without her putting on a defense, yet she had many opportunities to put forth her defense and did not do so. She failed to file an answer and failed to appear at the pre-hearing conference. Respondent's actions do not suggest that she is willing or eager to participate in the process against her. Her lack of prior discipline may be considered in a positive light, although, in a matter as serious as this, it carries little persuasion for mitigation.

Recent cases that are the most analogous to respondent's matter in terms of the seriousness, pattern and frequency of the misappropriation establish that a lengthy suspension is appropriate. In the matter of *Office of Disciplinary Counsel v. Foti,* no. 89 D.B. 2001 (Pa. July 24, 2003), an attorney with no prior discipline engaged in conversion of $33,000 of fiduciary funds and failed to promptly deliver settlement proceeds to a client. This attorney was suspended for three years, even after the consideration of mitigating factors. The attorney in *Office of Disciplinary Counsel v. Olshock,* no. 28 D.B. 2002 (Pa. October 24, 2003), was suspended for three years after he misappropriated $18,000 from an estate. In the

128

matter of *In re Anonymous No. 115 D.B. 97,* (Pa. March 23, 2000), an attorney with no prior history of discipline who commingled and converted client funds during a three-year period of time was suspended for three years.

Having considered all of the evidence presented in this matter, and having reviewed the prior case law, the board is persuaded that respondent should be suspended for a period of three years. A suspension of that length requires respondent to apply for reinstatement at the conclusion of the suspension period.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Gwendolyn N. Harmon a/k/a Gwen Norman, be suspended from the practice of law for a period of three years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

## ORDER

And now, December 13, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated August 27, 2004, it is hereby ordered that Gwendolyn N. Harmon a/k/a Gwen Norman be and she is suspended from the bar of this Commonwealth for a period of three years, and she shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.