## Office of Disciplinary Counsel v. Barrish

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CURRAN, *Member,* December 6, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disci-

plinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On August 31, 2004, Office of Disciplinary Counsel filed a petition for discipline against Daniel C. Barrish, respondent. The petition charged respondent with violating Rules of Professional Conduct 4.1(a), 8.2(b), 8.4(c) and 8.4(d) in connection with his actions of making false allegations of judicial misconduct in pleadings to the Supreme Court of Pennsylvania and in an article published over the Internet against the Honorable Phyllis W. Beck of the Superior Court of Pennsylvania and the Honorable Rhonda Lee Daniele of the Court of Common Pleas of Montgomery County. On September 23, 2004, respondent filed an answer to the petition for discipline.

A disciplinary hearing was held on December 3, 2004, January 10, 2005 and March 8, 2005, before a District II Hearing Committee comprised of Chair Michael S. Dinney, Esquire, and Members Caitlin Curran Hatch, Esquire, and William J. Gallagher, Esquire. Respondent appeared pro se.

Following the submission of briefs by the parties, the Hearing Committee filed a report on June 22, 2005, finding that respondent engaged in professional misconduct as charged in the petition for discipline and recommending that he be disbarred.

Respondent filed a brief on exceptions on July 11, 2005, and requested oral argument before the Disciplinary Board.

Petitioner filed a brief opposing exceptions on July 28, 2005.

Oral argument was held on August 16, 2005, before a three-member panel of the Disciplinary Board chaired by Robert E.J. Curran, Esquire, with Laurence H. Brown, Esquire and C. Eugene McLaughlin.

This matter was adjudicated by the Disciplinary Board at the meeting on September 12, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Daniel C. Barrish, was born in 1941 and was admitted to practice law in the Commonwealth in 1967. He maintains his office at 1912 Guernsey Avenue, Abington PA 19001.

(3) Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(4) Respondent has no prior history of discipline.

(5) In 2002, respondent represented Thomas Tracy in a custody case captioned *Thomas Edward Tracy v. Andrea*

*Lynn Tracy (Cockfield)* filed in the Montgomery County Court of Common Pleas.

(6) The Honorable Rhonda Lee Daniele presided over the custody trial and on August 2, 2002 ruled in Ms. Cockfield's favor.

(7) On September 4, 2002, respondent appealed the decision to the Superior Court of Pennsylvania.

(8) The Honorable Phyllis W. Beck was a member of the three-judge panel that decided the appeal. The other members were the Honorable Joseph A. Del Sole and the Honorable Robert A. Graci.

(9) The panel quashed the appeal because respondent failed to comply with requirements of applicable rules of appellate procedure.

(10) Respondent filed a petition for reconsideration that was denied.

(11) Respondent filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. The court denied the petition.

(12) Respondent filed numerous king's bench petitions, none of which were granted.

(13) On September 4, 2003, respondent posted a letter/article that was disseminated over the Internet. In the article, respondent made the following accusations:

"(1) The Tracy custody case was 'fixed' by the trial judge;

"(2) The Tracy custody case was 'fixed' in the Superior Court by the Superior Court judge;

"(3) There were three cases which Judge Daniele 'fixed,' and almost certainly others; and

"(4) 'Judge Daniele was obligated (money talks!) to include all sorts of bizarre provisions in her final order' in the Tracy custody case."

(14) On August 11, 2003, respondent filed an application for extraordinary relief pursuant to Rule 3309 in the Supreme Court of Pennsylvania.

(15) Respondent attached to the application a signed verification certifying that the facts set forth in the application were "true and correct to the best of [respondent's] knowledge, information and belief," and that the verification was "taken, subject to the penalties of 18 Pa.C.S. §4909 relating to unsworn falsification to authorities."

(16) In the application, respondent made the following accusations:

"(1) Judge Beck directed the deputy prothonotary to either not docket the Tracy matter or if it were docketed, to delay its disposition until a time when Judge Beck would be sitting on a panel, meaning late April and/or May;

"(2) Judge Beck approached Judge Montemuro to take his place on the panel and she did in fact do so; and

"(3) Judge Beck persuaded two panel members not to read the record, order and opinion for which she provided a summary."

(17) On March 24, 2004, respondent filed an application for reconsideration (the second application) in the Supreme Court of Pennsylvania.

(18) Respondent attached to the second application a signed verification certifying that the facts set forth in the second application were "true and correct to the best

of [respondent's] knowledge, information and belief," and that the verification was "taken, subject to the penalties of 18 Pa.C.S.§4904 relating to unsworn falsification to authorities."

(19) In the second application, respondent made the following accusation against the Honorable Phyllis W. Beck:

"(1) 'Judge Beck seriously violated Canons of Ethics,'

"(2) Judge Beck 'filed seemingly intentional false financial statements,'

"(3) Judge Beck is 'surely unable to maintain her credibility in the legal community because of her actions,' and

"(4) Judge Beck is 'someone of questionable virtue.'"

(20) In the second application, respondent made the following accusations against the Honorable Rhonda Lee Daniele:

"(1) Judge Daniele 'has made a mockery of the judiciary by openly and notoriously repeatedly violating serious filing obligations,' and

"(2) Judge Daniele serves 'at the risk of injuring the public, especially the children.'"

(21) Judge Daniele denied fixing the Tracy case.

(22) Judge Daniele denied fixing any case.

(23) Judge Daniele denied knowing either plaintiff or defendant prior to the Tracy case.

(24) Judge Daniele learned of respondent's September 2003 Internet article from her children.

(25) Judge Daniele denied intentionally making misrepresentations on her case reporting Forms 703.

(26) Judge Daniele did not report certain cases on case reporting Form 703 because she was not required to do so.

(27) On one occasion in regard to a case other than the Tracy case, the court administrator's office directed Judge Daniele to include cases where she was waiting for transcripts and/or memoranda from parties on case reporting Form 703 and she did so thereafter.

(28) Judge Daniele did not include the Tracy case on Form 703 because it was not ripe for reporting.

(29) Judge Daniele never filed intentionally false financial statements.

(30) Judge Daniele did not include certain properties on her yearly financial reporting form because the form did not require reporting the properties.

(31) Judge Daniele did not respond to respondent's allegations in his pleading to the Supreme Court of Pennsylvania because she was represented by counsel from the Administrative Office of Pennsylvania Courts who handled the matter.

(32) Judge Daniele has served on the Court of Common Pleas of Montgomery County since 1995.

(33) Judge Daniele has served as administrative judge of Family Court since 2000.

(34) Judge Daniele has approximately 2,500 cases assigned to her docket at any one time.

(35) Judge Daniele ordered the parties, including the daughter of respondent's client, to participate in counsel-

ing because of the history of respondent's client's relationship with his two other children.

(36) Whenever Judge Daniele includes children in her custody orders, a petition for governability is a remedy when a child does not comply with the custody order.

(37) Judge Daniele has committed children to Montgomery County Children and Youth Services when the children have failed to comply with a custody order.

(38) Judge Daniele has directed therapy sessions in other custody cases, particularly when there is valid reason for concern about the relationship between the child and parent.

(39) The president judge of Montgomery County Court of Common Pleas received copies of respondent's allegations concerning Judge Daniele's Form 703s and financial forms from respondent.

(40) The president judge did not discipline or discuss the Form 703s and financial forms with Judge Daniele after receiving information from respondent.

(41) The court administrator of the Supreme Court of Pennsylvania, Zygmont Pines, Esquire, received copies of respondent's allegations concerning Judge Daniele's Forms 703s and financial forms from respondent in respondent's petition to the Supreme Court and under cover of letters from respondent.

(42) Mr. Pines did not contact, discipline or discuss the Form 703s and financial forms with Judge Daniele.

(43) Respondent communicated the accusations against Judge Daniele which he included in his Internet article and court pleadings to numerous entities and individuals, including but not limited to the list serve of

the Family Law Division of the Montgomery Bar Association; letters to the Montgomery County Commissioners; and letters to Montgomery County Court of Common Pleas Judges Rodgers and Corso.

(44) Respondent stated in his letter to the Montgomery County Commissioners, dated September 10, 2004, that Judge Daniele has taken bribes since her first year on the bench in 1995.

(45) Judge Daniele was aware of respondent's statements in his September 10, 2004 letter to the County Commissioners and denied ever taking a bribe.

(46) Judge Daniele believes she has never had any other unhappy litigant attack her professional integrity by saying she "threw" or fixed a case because she was being paid to do so.

(47) No one from the federal government, the Federal Bureau of Investigation, or the Montgomery County District Attorney's Office contacted Judge Daniele concerning respondent's accusations.

(48) Respondent's accusations against Judge Daniele have caused her distress; have taken her time in loss of sleep and in thinking as to whether she filled out the forms involved correctly.

(49) Judge Daniele is concerned about respondent's conduct because someone may believe his statements. It is constantly on her mind that her personal business is "splashed" in articles and pleadings.

(50) Judge Beck denied fixing the Tracy appeal.

(51) Judge Beck denied approaching the Superior Court Prothonotary and asking to be placed on the Tracy appeal panel.

(52) Judge Beck denied directing the Superior Court Deputy Prothonotary to either delay docketing or to not docket the Tracy appeal.

(53) Judge Beck denied directing the delay of the disposition of the Tracy appeal until she would be sitting on the panel.

(54) Judge Beck denied approaching Judge Montemuro or any other member assigned to the original Superior Court panel to take their place on the panel.

(55) Judge Beck denied persuading the other judges not to read the lower court opinion.

(56) Judge Beck denied providing a summary of the record to the other judges on the panel.

(57) Judge Beck denied violating the Canons of Ethics.

(58) Judge Beck denied filing intentionally false financial statements.

(59) Judge Beck was assigned to sit on the Superior Court panel in the Tracy appeal because one of the judges initially assigned, Judge McEwen, had a fractured ankle.

(60) On February 4, 2003, Charles O'Connor, the deputy prothonotary for the Superior Court for the Eastern District of Pennsylvania, scheduled the Tracy appeal for March 13, 2003 before a panel including Judge Del Sole, Judge Graci and Judge McEwen.

(61) On March 7, 2003, Judge McEwen's secretary called David Szewczak, the prothonotary, and advised that Judge McEwen would not be available due to a fractured ankle.

(62) On March 7, 2003, Mr. Szewczak appointed Judge Beck to serve on the Tracy appellate panel.

(63) Judge Beck did not know the plaintiff or defendant in the Tracy case before her assignment to the panel.

(64) Because of the emergency assignment to the panel, this was the first time in 20 years where Judge Beck had not read the briefs filed by the litigants in advance of the argument.

(65) The appellate panel decided to quash the appeal because respondent had not filed a proper brief and had failed to comply with the requirements of the appellate rules in filing the brief.

(66) The appellate panel found that respondent's brief did not comply with the requirements of Pa.R.A.P. 2101 and 2111 because respondent's "vituperative discussion of three issues preserved for appeal was devoid of citation to case law, specific references to places in the record and organized legal argument."

(67) The Superior Court panel did not grant reargument and reconsideration of its decision to quash the appeal in response to respondent's petition for reconsideration because respondent did not properly tell the panel what mistake had been made in compliance with the rules of appellate procedure.

(68) Judge Beck has served for 24 years on the Superior Court of Pennsylvania.

(69) Judge Beck has served as a senior judge since 1999.

(70) Judge Beck participated in a total of 225 Superior Court opinions and memoranda in 2004.

(71) Judge Beck was particularly concerned about respondent's brief to the Superior Court in the Tracy case

because he made statements about Judge Daniele including the following "the trial judge who conducted the lower court proceedings in this matter should immediately be removed from the bench because of a viciously contrived court order which both mocks the law and cavalierly disregards the best interests of children and others, whether such action resulted from ignorance of the law, mental illness, substance abuse and/or judicial misconduct."

(72) Judge Beck had never before seen statements attacking a judge personally, such as the ones respondent made against Judge Daniele in his brief to the Superior Court.

(73) Judge Beck became aware of respondent's September 2003 Internet article from Judge Daniele.

(74) Judge Beck was aware that respondent communicated the accusations contained in the Internet article against Judge Beck to Governor Rendell, Dean Reinstein, the dean of Temple University Law School, Lynn A. Marks, Esquire, the head of Pennsylvanians for Modern Courts, and Judge Beck's colleagues: Judge Del Sole, President Judge of the Superior Court of Pennsylvania, Senior Judge McEwen, Judge Ford Elliot and Judge Panella.

(75) President Judge Del Sole did not contact or reprimand Judge Beck concerning respondent's allegations.

(76) Judge Beck denied filing intentionally false financial statements.

(77) Judge Beck did not report the $250,000 award her husband received from the Heinz Foundation because it was turned over to the Beck Foundation.

(78) Judge Beck did not report her role in Third Avenue Funds because she did not believe she was required to do so under the reporting rules.

(79) Judge Beck has suffered embarrassment before her colleagues, sleepless nights and concerns and questions from family members.

(80) Respondent testified at the disciplinary hearings.

(81) Respondent did not know who paid money to Judge Daniele and Judge Beck to allegedly "fix" the Tracy case.

(82) Respondent presented no evidence that anyone paid money to Judge Daniele and Judge Beck to "fix" the Tracy case.

(83) Respondent did not know how much money was paid to the judges to "fix" the Tracy case.

(84) Respondent presented no evidence as to how much money was paid to the judges.

(85) Respondent did not know how the Tracy case was "fixed" by the judges and presented no evidence on that issue.

(86) Respondent did not know how Judge Daniele fixed other cases besides the Tracy case and presented no evidence to support this allegation.

(87) Respondent did not know how Judge Beck was paid to "fix" the Tracy appeal or who paid her to do so, nor did he present evidence concerning this issue.

(88) Respondent did not know whether Judge Beck directed the deputy prothonotary to either not docket the Tracy matter or, if it were docketed, to delay its disposi-

tion until a time when Judge Beck would be sitting on a panel.

(89) Respondent did not present evidence other than his unsupported conclusions, speculations and suppositions concerning Judge Beck's assignment to the panel in the Tracy case.

(90) Respondent did not know whether Judge Beck approached Judge Montemuro to take his place on the panel.

(91) Respondent did not know whether Judge Beck persuaded two panel members not to read the record, order and opinions for which she provided a summary.

(92) Respondent presented no evidence concerning the Superior Court panel's determination in the Tracy appeal.

(93) Respondent did not present evidence other than his unsupported conclusions, speculations and suppositions concerning Judge Daniele's filling out of case reporting Form 703.

(94) Respondent did not present evidence other than his unsupported conclusions, speculations and suppositions as to Judge Daniele's yearly financial reports.

(95) Respondent did not present sufficient evidence as to how Judge Daniele's reporting of cases on Form 703 and financial information related to her ruling in the Tracy case.

(96) Respondent did not present sufficient evidence as to how Judge Beck's reporting of financial information related to her participation on the Superior Court panel in the Tracy case.

(97) Respondent did not conduct a reasonably diligent inquiry before making the allegations he made in the Internet article and in sworn pleadings to the Supreme Court of Pennsylvania and the Supreme Court of the United States.

(100) Respondent filed complaints with the Judicial Conduct Board against Judge Beck and Judge Daniele.

(101) The Judicial Conduct Board advised respondent that his complaints against Judge Beck and Judge Daniele had been dismissed by letter dated January 21, 2005.

(102) Respondent does not believe that he has violated any Rules of Professional Conduct and is not remorseful for his actions.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 8.2(b)—A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officers.

(2) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(3) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

Respondent did not violate R.P.C. 4.1(a), which states that in the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person. Respondent published accusations on the Internet based on his personal impressions and

opinions that his case was fixed. These were not material facts concerning the representation of his client

## IV. DISCUSSION

This matter is before the Disciplinary Board for consideration of the petition for discipline filed against respondent charging him with professional misconduct arising out of false accusations against two judges. Respondent represented Thomas E. Tracy in a custody case filed in the Montgomery County Court of Common Pleas. The case was assigned to Honorable Rhonda Lee Daniele. In August 2002, Judge Daniele entered a custody order directing the parties to engage in counseling and directing other aspects of the ongoing custody arrangement. In response, respondent filed a petition for reconsideration that was denied. Respondent then filed an appeal to the Superior Court of Pennsylvania. A Superior Court panel comprised of Honorable Joseph Del Sole, Honorable Robert A. Graci and the Honorable Phyllis W. Beck quashed the appeal because respondent failed to comply with the requirements of the applicable rules of appellate procedure. Respondent filed a petition for reconsideration that was denied. Respondent filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. The court denied the petition.

Respondent accused Judge Daniele and Judge Beck of fixing the custody case, of being dishonest, of filing false case reporting forms, of filing false financial reports, and in the case of Judge Daniele, of taking bribes. Respondent published these accusations in an article over the Internet. Respondent included the accusations in numerous letters to a variety of individuals, including

but not limited to: judges, the Governor of Pennsylvania, the Dean of Temple University Law School, and the Montgomery County Commissioners. Respondent also swore to the truthfulness of the accusations in pleadings to the Supreme Court of Pennsylvania and the Supreme Court of the United States.

After three days of hearing, the Hearing Committee filed a report and found that respondent violated Rules of Professional Conduct 4.1(a), 8.2(b), 8.4(c), and 8.4(d). The committee recommended that respondent be disbarred.

Respondent took exception to the report and requested oral argument. The basis for his exception is that there are no specific findings of fact made by the committee, but instead a reference to petitioner's proposed findings. Respondent contends that, as there are no valid findings of fact, there can be no valid conclusions of law; therefore, the charges against respondent should be dismissed.

Review of the report of the Hearing Committee demonstrates that the committee made findings of fact by adopting the findings made by petitioner in its brief to the Hearing Committee. The committee further stated that respondent acknowledged his statements in the joint stipulation of facts. While the committee did not make numbered findings, certainly their adoption of petitioner's proposed findings was appropriate and clearly intended to be the findings of the committee. For these reasons the board rejects respondent's exceptions and recommendation to dismiss the charges against him.

The burden of proving professional misconduct lies with petitioner, which must prove the violations by a

preponderance of the evidence that is clear and satisfactory. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981). Petitioner alleges that respondent violated R.P.C. 4.1(a) by his conduct in publishing false statements about two judges over the Internet, disseminating them to numerous third parties and including them in court pleadings. Specifically, R.P.C. 4.1(a) states that "In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person." The board's review of the record demonstrates that respondent made accusations against two judges but did not make a false statement of *material* fact or law to a third person. Respondent's accusations constitute his opinions or impressions that the Tracy case was fixed, but do not constitute material facts. A material fact is one which is essential to the case and without which it could not be supported. Black's Law Dictionary 881 (5th ed. 1979). For this reason R.P.C. 4.1(a) does not apply to the instant matter; accordingly, that charge against respondent is dismissed.

The board's review of the other rule violations charged demonstrates that petitioner met its burden of proof. R.P.C. 8.2(b) prohibits a lawyer from knowingly making false accusations against a judge. By continually making false accusations against Judge Daniele and Judge Beck, respondent violated this rule. R.P.C. 8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. A prima facie case is made where the record establishes that the misrepresentation was knowingly made, or made with reckless ignorance of the truth or falsity of the representation. *Office of Disciplinary Counsel v. Anonymous Attorney A,* 552 Pa. 223, 714 A.2d 402 (1998). The record establishes

that respondent routinely and repeatedly acted recklessly by stating as facts things of which he was ignorant. R.P.C. 8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice. Respondent's continued attacks against Judge Daniele and Judge Beck without evidence of the truth of the accusations and without an objective reasonable basis for the accusation prejudices the administration of justice.

The record supports the findings of violations of Rules of Professional Conduct 8.2(b), 8.4(c) and 8.4(d). This matter is ripe for the determination of discipline. It is appropriate for the board to consider both aggravating and mitigating factors in determining the appropriate sanction. At the disciplinary hearings respondent maintained his position as set forth in his accusations and failed to make any apology or retraction. Instead, respondent continued to make disparaging and inappropriate remarks against the two judges. For example, when asked what personal gain Judge Daniele received for deciding the Tracy case as she did, respondent stated "Obviously, she had to have received something because only an idiot who knew nothing about the law would come down to a decision like that, to embarrass herself if it was ever published." (N.T. 489.) Respondent does not grasp the reason why his conduct was wrong and violated the Rules of Professional Conduct. As an attorney in this Commonwealth for 38 years, respondent should understand the deleterious effects on the legal system of making unfounded accusations against judicial officers. In view of the continuing nature of respondent's misconduct, his lack of disciplinary history does not weigh heavily in his favor.

Disciplinary cases involving accusations against judicial officers have been considered by this board and the

Supreme Court. The two controlling cases are *Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441 (2000) and *Office of Disciplinary Counsel v. Price,* 557 Pa. 166, 732 A.2d 599 (1999). The court entered a five-year suspension in each case.

Mr. Price filed three court documents that contained false allegations against two district justices and an assistant district attorney. Mr. Price was found to have falsely completed portions of Department of Public Welfare forms designated to be completed by a medical provider by signing the forms as "Dr. Neil Price J.D." Mr. Price accused a district justice of participating in an undercover effort against Price to curry favor with state police and the attorney general and of engaging in official oppression by colluding with a state trooper in allowing a baseless lawsuit. Mr. Price made the statements in reaction to the district justice serving as a witness against Price in a then pending criminal action. Mr. Price accused a second district justice of abusing his office by fixing citations from other jurisdictions, assuming a prosecutorial bias to ingratiate him with disciplinary authorities and others and sexually harassing several constituents. Mr. Price accused the assistant district attorney of acting with malice against Price because Price purportedly discovered that the assistant district attorney had embezzled a private client's judgment.

Mr. Surrick made accusations of case fixing against three judges. In that case, the Supreme Court rejected a subjective approach which would permit a respondent to escape responsibility by simply stating that he personally believed the accusations to be true. The court held that "An attorney proceeds recklessly when he presents

assertions without any indicia of the accuracy of those assertions, or without a minimal effort to investigate the accuracy thereof." *Surrick,* 561 Pa. at 178, 749 A.2d at 447. Respondent drew unwarranted conclusions from benign events and seemingly willful misinterpretations of filing requirements and then published his false accusations in signed court pleadings, over the Internet and in letters to numerous judges without any evidence of truth or any reasonable objective basis to make the accusations. This behavior was reckless.

Respondent was not able to provide any evidence to support any of his accusations against Judge Daniele and Judge Beck. Respondent has based his entire pursuit of these matters on his illogical deduction that there is no reason for the decisions made by the judges other than judicial impropriety. Respondent has continued to make disparaging remarks against the judges, sees himself as unjustly accused, and does not acknowledge his behavior or its impact on the judicial system. He presented no character evidence or independent testimony that supported his allegations. Respondent's misconduct calls into question his ability to continue practicing law in a fit manner. In light of this serious misconduct and the controlling case law, the board is persuaded that a suspension of five years is appropriate.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Daniel C. Barrish, be suspended from the practice of law for a period of five years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Newman and Nordenberg did not participate in the September 12, 2005 adjudication.

## ORDER

And now, March 15, 2006, upon consideration of the report and recommendations of the Disciplinary Board dated December 6, 2005, the petition for review and responses thereto, it is hereby ordered that Daniel C. Barrish be and he is suspended from the bar of this Commonwealth for a period of five years, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Madam Justice Baldwin did not participate in this matter.

Mr. Justice Castille dissents and would disbar respondent.